IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CR No. 14-66-EGS-1 |
| | ) | |
| | ) | Washington, D.C. |
| vs. | ) | March 27, 2014 |
| | ) | 4:30 p.m. |
| SAENA TECH CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:        Bryan G. Seeley
                           Michael K. Atkinson
                           U.S. ATTORNEY'S OFFICE
                           Criminal Division
                           555 Fourth Street, NW
                           Washington, D.C. 20530
                           (202) 252-1749
                           Bryan.Seeley@usdoj.gov
                           Michael.Atkinson2@usdoj.gov

For the Defendant:         Steven Brizek
                           KIM & BAE, P.C.
                           2160 North Central Road
                           Suite 303
                           Fort Lee, NJ 07024
                           (201) 585-2288

APPEARANCES CONTINUED:

Court Reporter:              William P. Zaremba, RMR, CRR
                             Registered Merit Reporter
                             Certified Realtime Reporter
                             Official Court Reporter
                             U.S. District Court
                             for the District of Columbia
                             333 Constitution Avenue, NW
                             Room 6511
                             Washington, D.C. 20001
                             (202)354-3249
                             WilliamPZaremba@gmail.com


Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription

```
1                  P R O C E E D I N G S
2              DEPUTY CLERK:  This is criminal matter 14-066,
3    United States of America versus Saena Tech Corporation.
4    Will all parties on the line please identify yourselves for
5    the record, please.
6              MR. BRIZEK:  Yes.  Steven Brizek with the firm of
7    Kim and Bae in New Jersey on behalf of Jim Seak Kim, who
8    I'll be referring to as James Kim, if that's all right with
9    the Court.
10             MR. SEELEY:  Hi.  This is Brian Seeley here with
11   Michael Atkinson on behalf of the government.
12   Good afternoon, your Honor.
13             THE COURT:  All right.  Good afternoon, everyone.
14             I'm not aware that anyone's entered an appearance
15   on behalf of Defendant corporation.  Am I wrong?
16             MR. BRIZEK:  That is correct, Judge.
17   Steve Brizek.
18             The attorney for the corporation is Sucheol Noh,
19   a Korean attorney, who I did not contact -- it's the middle
20   of the night there -- to participate in the phone
21   conversation, but he is the attorney for the corporation,
22   technically.
23             We are the attorneys for Mr. Kim, who is a
24   principal of the company and managing director of the
25   company.
```

```
1         So no one, including we, have filed a formal
2    appearance.
3         THE COURT:  All right.  Well, I'm really reluctant
4    to do anything if no one's entered an appearance on behalf
5    of the Defendant.  The Government did file an information.
6    Let me hear from Mr. Seeley or Mr. Atkinson.  The reason why
7    I scheduled this conference is because I wanted to avoid a
8    lot of confusion next Monday.
9         So Mr. -- What I know about this case -- and all I
10   know about is probably hearsay two or three times removed --
11   is that this information's been filed, and that it's the
12   intent of the Government, at least, to proceed by way of a
13   deferred prosecution agreement, but that's all I know.
14        So, Mr. Seeley or Mr. Atkinson, maybe you can help
15   us along here.
16        I'm reluctant to schedule anything unless someone
17   entered an appearance on behalf of the Defendant according
18   to our rules, so...
19        Go ahead, Counsel.
20        MR. BRIZEK:  This is Brian Seeley.
21        Thank you, Your Honor, for scheduling this.
22   I think this will help clear up the confusion.
23        THE COURT:  Sure.
24        MR. SEELEY:  So we appreciate the opportunity to
25   approach you.
```

1           THE COURT:  Sure.  Absolutely.
2           MR. SEELEY:  And what the Court has heard through
3  hearsay is correct.  The parties have reached a deferred
4  prosecution agreement in this case, and it has been signed,
5  and it is ready to be filed.  But I think the Court is right
6  that an attorney for the corporation does need to enter an
7  appearance, and, hopefully, that can happen soon, and then
8  we'd ask to schedule a hearing before the Court where we
9  could present the deferred prosecution agreement and have it
10 filed.  It's a two-year agreement, so we'll be asking the
11 Court just to stay the proceedings, you know, pending the
12 end of the two-year term.  And the only reason we come back
13 to court is if the Court wanted regular updates or if there
14 were some violation of the agreement.
15          THE COURT:  All right.  Counsel, I'll leave it up
16 to you, if you want to check the docket in the Barclays
17 case -- that's another case I had a year or two ago --
18 involving a deferred prosecution agreement.  I probably will
19 follow the same procedures in this case that I followed
20 there.  There will have to be someone present from this
21 corporation with authority to speak on behalf of the
22 corporation on whatever date the Court picks -- convenient
23 date that the Court picks for everyone to determine whether
24 to accept or not accept the deferred prosecution agreement.
25 So I don't think we're at that point now.  But you can look

1  at the docket in Barclays.  And I don't have the case number
2  right here in front of me, but it's Barclays Bank versus --
3  it's the United States versus Barclays.  And Jen can get it
4  to you and send it to you, but you have the resources to
5  find it.
6          So I would also, in all likelihood, schedule
7  periodic status conferences to determine whether or not
8  there's been compliance with the deferred prosecution
9  agreement.  I think I did that in Bar -- in fact, I know I
10 did that in Barclays.  It may have been every 90 days or so;
11 it may have been every six months.  I don't recall right
12 now.  But whatever the procedures were in the Barclays case.
13 I invite counsel to look at the docket, and I'm going to try
14 to replicate those procedures.
15         I'm glad we're talking.  I'm not sure we're at the
16 point of scheduling a status hearing.  And I was concerned
17 that parties may have different opinions about what was to
18 be accomplished at a status hearing, so I'm glad we're
19 talking.
20         If there -- if the intent is to have one status
21 hearing with the deferred prosecution agreement presented to
22 the Court for its consideration, then a couple of things
23 will have to take place.  First, the Court's going to have
24 advanced knowledge of the deferred prosecution agreement so
25 I have an opportunity to study it and think about it.

1  And, secondly, on whatever date the parties recommend, that
2  there should be a proceeding for the Court to consider
3  whether there deferred prosecution agreement should be
4  accepted.  You know, that can either take place on the
5  status hearing date, that can be a later date, but there's
6  going to have -- there will have to be present a corporate
7  officer with the requisite proof that he or she has
8  authority to bind the corporation with this type of an
9  agreement.  So I'm going to dot every "I" and cross every
10 "T".
11         So I'm just glad we're talking, because I didn't
12 want people to come in next Monday, hypothetically, and
13 assume that we were going to accomplish all of this next
14 Monday.  I don't think we can next Monday, but I think we
15 can accomplish a lot by virtue of having this conversation.
16         My law clerk is trying to get my attention.
17 Let me just put you on hold just for one second.
18 You can talk quietly among yourselves if you want to.
19         (Pause)
20         THE COURT:  Counsel?
21         MR. BRIZEK:  Your Honor?
22         THE COURT:  Counsel, can you hear me?
23         MR. BRIZEK:  Yes.
24         THE COURT:  One problem we did have.  And Jen
25 was -- thank you for bringing it to my attention.

| | |
|---|---|
| 1 | There was an issue with respect to whether or not the |
| 2 | individual present could understand -- actually, the |
| 3 | documents were written in -- written in Chinese, I think. |
| 4 | That was the problem.  I recall that now.  The documents |
| 5 | were written in Chinese, and the representative present |
| 6 | couldn't understand it, couldn't read it.  It was just one |
| 7 | of these situations where you like to avoid.  So I just |
| 8 | raised that because whoever's present is going to have to be |
| 9 | able to read from whatever documents give that person the |
| 10 | authority to speak on behalf of the corporation, because I |
| 11 | think we had two or three hearings or so and people had to |
| 12 | come back.  And I think we had a couple of different types |
| 13 | of translators, and it was challenging. |
| 14 | It's been represented that there may be a |
| 15 | representative from South Korea present.  That's fine. |
| 16 | We welcome that person.  If there's a need for an |
| 17 | interpreter, then we'll have to make arrangements for an |
| 18 | interpreter.  If there are documents that have to be |
| 19 | interpreted, it's going to be important that the person |
| 20 | speaking can read those documents and interpret those |
| 21 | documents, or that the independent interpreter can interpret |
| 22 | the documents.  That was a big problem in Barclays, if I |
| 23 | recall correctly. |
| 24 | MR. BRIZEK:  Your Honor -- |
| 25 | THE COURT:  So, again, that's another purpose |

```
 1   that's been accomplished by this conversation.
 2             I think that was Mr. Atkinson was about to talk or
 3   Mr. Seeley.
 4             MR. BRIZEK:  Actually, Steve Brizek, Your Honor.
 5             THE COURT:  Okay, Mr. Brizek, yeah.
 6             MR. SEELEY:  If I may make just a few comments.
 7   First of all, I'm assuming, from what Your Honor has said,
 8   that the hearing for next week, April 1st, is not going to
 9   take place.
10             THE COURT:  I don't think we're at that point.
11   I mean, I don't have any entry of appearance from any
12   attorney on behalf of the corporation.  I'm not concerned
13   about the sole stockholder, I'm concerned about the
14   corporation.
15             And, secondly, I've not seen the deferred
16   prosecution agreement.  And I do want to give some advance
17   scrutiny of the agreement so that I can ask appropriate
18   questions.
19             MR. BRIZEK:  I understand.
20             THE COURT:  So those things have not occurred.
21   So I doubt seriously whether we're at the point of
22   scheduling a status conference or any other hearing at this
23   point.
24             MR. BRIZEK:  Yeah.  And the reason I raised that
25   is, when we first got word of this, I reached out to
```

1    Mr. Noh, the attorney in Korea, and there was just a
2    logistical problem with him trying a case on April 2nd,
3    being able to fly out on the 2nd and be here for April 3rd,
4    so I was going to request that the matter be carried for a
5    day or two, but that doesn't appear to be necessary because
6    of what Your Honor has just indicated.
7               THE COURT:  I think time is not a problem, but I'm
8    not going to lose sight of the Speedy Trial Act either.
9               MR. SEELEY:  No, no.
10              THE COURT:  That clock is ticking, I believe, is
11   it not?
12              MR. SEELEY:  Well, there's been no --
13              THE COURT:  There's been no arraignment.
14              MR. SEELEY:  Yeah.  There's been no arraignment
15   here.  I honestly have not looked into the speedy trial
16   implications, Your Honor.
17              THE COURT:  Mr. Seeley?
18              MR. SEELEY:  Yeah.  Yes, Your Honor, it's
19   Bryan Seeley.
20              THE COURT:  Okay.  That was -- Okay.  I don't want
21   to lose sight of that either.
22              MR. BRIZEK:  Right.
23              THE COURT:  So I'm receptive to any suggestions.
24   It may well be that after we finish talking today, Counsel
25   can talk among themselves and agree on certain things that

```
 1   you can jointly propose to the Court, and I'm sure we can
 2   work out the logistics.
 3            One of the things that went over with a real thud
 4   in the Barclays case was that the representative wanted to
 5   go through the Rule 11 inquiry over the telephone in
 6   England, and that's a nonstarter.
 7            So whoever the representative is that's going to
 8   have to go through the Rule 11 inquiry, that person, he or
 9   she, is going to have to be in court.  And I recognize
10   that's quite a voyage, so we can work out the logistics on a
11   date and time that's convenient for everyone.
12            MR. BRIZEK:  Your Honor, Steve Brizek again.
13   With respect to that, in addition to Mr. Noh, the attorney
14   from Korea, you would require an actual corporate officer --
15   not the attorney, but a corporate officer?
16            THE COURT:  Absolutely.  Absolutely.
17            MR. BRIZEK:  All right.
18            THE COURT:  Someone who's going to stand here and
19   take the oath in my presence --
20            MR. BRIZEK:  All right.
21            THE COURT:  -- and bind this corporation.
22   And also someone who can persuade me that he or she has the
23   authority to do so, because, you know, whatever authority
24   the corporation has bestowed on him or her, that authority
25   is going to have to be present.
```

```
1              MR. BRIZEK:  All right.  Well, that's very
2  important to clarify, because we were going to be filing a
3  request that they waive their appearance.  But if one or the
4  other of the two principal owners of the corporation need to
5  be present, we will make sure that they coordinate their
6  plans and get over here.
7              THE COURT:  Right.  Whoever is -- Now, look.
8  I don't have any problems waiving appearances for status
9  hearing.  I don't have any problems about that at all.
10 And it may well be that we need a status hearing prior to
11 presentation of the deferred prosecution agreement.
12 I just do not know enough about the case right now.
13 But for purposes of the status hearing, I'm not going to
14 require someone -- that corporate representative to fly here
15 for that.
16             MR. BRIZEK:  All right.
17             THE COURT:  If the corporation wishes to waive
18 appearance and the corporation is a party, then the
19 corporation can, pursuant to our federal and local rules,
20 waive its appearance.  I mean, since it's a criminal case,
21 corporations have a right to be present.  So all I'll say is
22 just follow the rules.
23             But in terms of the actual hearing for the Court
24 to determine whether the DPA will be accepted or not, then
25 we have to have the corporate representative here, and that
```

1   representative is going to have to persuade the Court that
2   he or she or they have the authority conferred upon them, or
3   he or she, or whatever, by the corporation to enter into
4   this agreement, because the last thing I want to do is go
5   through this process and find out that whoever was here
6   didn't have the authority.  I don't want to do that.
7            MR. BRIZEK:  I understand, Judge.  Steve Brizek
8   again.
9            And the other logistical problem is this.
10  And I apologize for my not being on top of what is required
11  in this respect.  Mr. Noh, the attorney in Korea, is
12  admitted to practice in New York State, but he is not
13  admitted to practice in the D.C. District.  I'm admitted to
14  practice in New Jersey, the District of New Jersey, and in
15  New York, but I am not a member of the bar in D.C. or the
16  D.C. area.
17           THE COURT:  All right.  These are good points you
18  raise, Counsel.  All I can say is work it out, follow our
19  local rules, okay?
20           MR. BRIZEK:  All right.  Well, what I'm doing --
21           THE COURT:  All right.  You probably -- I don't
22  want to misspeak, but you may have to, you know, find
23  someone to sponsor your admission pro hac vice.  That's a
24  thought.  I may be wrong.  I don't have the rules in front
25  of me.

```
1              MR. BRIZEK:  All right.
2              THE COURT:  But I'm not -- You know, I'm not going
3    to waive that requirement.  So just follow our local rules,
4    and you'll be in good stead, okay?
5              MR. BRIZEK:  Okay.  Well, what is gratifying,
6    Your Honor, is that we have a little time to take care of
7    that.  And I'm going to jump right on that to be sure, but
8    at least I don't have to worry about it for next Tuesday.
9              THE COURT:  No.  That's fine, Counsel.
10             And, Cheryl Horn -- and Mr. Coates can give you
11   her phone number when I get off the phone.  Cheryl Horn is
12   our court representative, who heads up that office of
13   reciprocal admissions -- attorney admissions.
14   And Mr. Coates can give you her phone number.
15   And I encourage you to reach out to her and find out what's
16   required.  But you should get a copy of the local rules
17   also.
18             But we're going to do this.  You know, I'm going
19   to -- You know, I'm going to be a stickler for it, all
20   right?  So if no one's admitted, then you'll have to follow
21   whatever the rules say you have to do.  You may just have to
22   get a colleague, a friend, or someone -- or hire someone to
23   move your admission.  Whatever the rule says, you'll just
24   have to do it, okay?
25             MR. BRIZEK:  Yes, sir.
```

```
 1            THE COURT:  All right.
 2            And that's very important, because don't enter --
 3   I don't think you can enter your appearance anyway if you're
 4   not a member of the bar.  I don't think they'll accept that.
 5   So I don't want to see anyone get in trouble over an
 6   admission issue, so just go ahead and follow the rules and
 7   reach out to Ms. Horne.
 8            It doesn't sound like time is an issue here, but I
 9   think the speedy trial clock will start to run when there's
10   an arraignment.  I don't believe it's run yet.  So we have
11   the -- Does anyone object to what the Court just said as a
12   matter of law?  I don't believe that speedy trial rights are
13   implicated now.
14            MR. BRIZEK:  Your Honor, Steve Brizek again.
15   My understanding is -- and, again, stand to be corrected --
16   that there is not going to be an arraignment as such because
17   there's going to be no plea.  It's just going to be the
18   filing of the information.  And I would defer to
19   Mr. Atkinson and Mr. Seeley to correct me.
20            THE COURT:  Yeah.  Well, the information has been
21   filed.  I don't believe that the filing of the information,
22   absent a waiver, triggers speedy trial rights, but that's
23   not a legal ruling.  That's -- I'm going from recollection
24   now, but I don't want the sand to run out of the clock
25   either.
```

```
1              Mr. Seeley and Mr. Atkinson, do you want to look
2    into that?
3              MR. SEELEY:  This is Brian Seeley.
4              That is our understanding as well, Your Honor, but
5    we will obviously double-check that, because I want to make
6    sure.
7              THE COURT:  All right.  So however Counsel want to
8    proceed will probably be fine with me.  I mean, it sounds
9    like Counsel need to talk among yourselves.  There's going
10   to be somebody enters his appearance or her appearance.
11             Maybe we need a status hearing prior to the formal
12   presentation of the DPA.  Whenever the parties agree that
13   the DPA will be presented, I'm going to need some advance
14   notice.  It's going to have to be filed on the docket so I
15   can read it and understand -- and study it, and, you know --
16   and prepare any questions that I have.  So I'm going to need
17   some time to do that.
18             So having said all that, I'll just leave it up to
19   Counsel.  Are there any questions?  Do we need to talk again
20   maybe in a week?  Maybe, you know, sooner, but maybe later?
21   I don't know.  What's your pleasure?
22             MR. SEELEY:  Your Honor, this is Brian Seeley.
23   The DPA is signed and ready.  So if Your Honor wants us to
24   file it, we can do that --
25             THE COURT:  Sure.
```

```
1                MR. SEELEY:  -- or we can keep it.
2                THE COURT:  Go ahead.  That'll be fine.
3    Just go ahead and put it on the docket.  That'll be fine.
4                MR. SEELEY:  That's what we'll do, Your Honor.
5                THE COURT:  All right.
6                MR. SEELEY:  And then I would suggest the parties
7    talk amongst themselves and, you know, we file a motion
8    asking for either a status date or a date in which we can
9    present the DPA to the Court, depending on how comfortable
10   we feel, if that -- you know, if that is okay with the
11   Court.
12               THE COURT:  Sure.  I think that's a good
13   suggestion.  Either propose -- Either jointly propose a
14   procedure with suggested dates; or if you can't reach
15   agreement -- I really encourage you to try to reach an
16   agreement.  Actually, you probably have to reach an
17   agreement since we're talking about presentation of an
18   agreement.
19               So go ahead and talk about it and propose some
20   dates, and I'm sure we can work out dates and times that are
21   convenient for everybody, recognizing someone's got to
22   travel quite a distance.  Maybe more than one person.
23   I don't know.
24               MR. BRIZEK:  Yes.
25               THE COURT:  All right?
```

```
 1                MR. SEELEY:  All right.  Thank you, Your Honor.
 2                THE COURT:  All right.  I can't think of any other
 3   questions right now.
 4                You know, I assume -- I'm going to make an
 5   assumption this is a corporation that is formed pursuant to
 6   the laws of some sovereign and that, indeed, there are
 7   Articles of Incorporation that indicate how the corporation
 8   can proceed.  And I'm going to assume that whoever appears,
 9   appears consistent with that authority.  Those are just
10   assumptions I'm going to make.  I may be wrong.  But if I'm
11   wrong, let's avoid surprises, and you can anticipate I'll be
12   asking these questions.  Okay?
13                MR. BRIZEK:  All right.  Yes.
14                THE COURT:  All right, Mr. Brizek.  Anything
15   further?
16                MR. BRIZEK:  No, sir.
17                THE COURT:  Okay.  All right.
18                Okay, Counsel, it's been great talking to you.
19   I think this has been productive.  We've saved some time, as
20   opposed to potentially wasting some time next week.
21   So I'm not going to schedule another hearing right now.
22   The Government will file its DPA, the Court will consider
23   it, and the Court will promptly focus its attention on any
24   motion for further proceedings, okay?
25                MR. BRIZEK:  Thank you, Your Honor.
```

1          MR. SEELEY:  Thank you, Your Honor.
2          THE COURT:  Thank you, all.  Okay.  Bye-bye.
3          MR. BRIZEK:  Bye-bye.
4          DEPUTY CLERK:  Hello, Mr. Brizek.
5          MR. BRIZEK:  Yes.
6          DEPUTY CLERK:  Let me give you Cheryl Horne's
7   number.  It's (202)354-3107.
8          (Proceedings concluded at 4:51 p.m.)

C E R T I F I C A T E

   I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

Date: November 20, 2015_____   /S/__William P. Zaremba_____

              William P. Zaremba, RMR, CRR